All right. You can be seated. Next case we'll hear is Hayden v. Butler. And Mr. Finarelli, whenever you're ready, we'll hear from you. May it please the court. The district court's decision below fundamentally misapplies Graham v. Florida. As Mr. Hayden has been eligible and has received parole review since 2002, he was sentenced to life with the possibility of parole, has received it for nearly 14 years now. And so Graham doesn't apply to the circumstances of this case. The court has jurisdiction to consider this. This was an issue, an order that the court had issued indicating that we'd be prepared to address jurisdiction. And I think the court has jurisdiction for three reasons. First, this is a final decision. Despite what Judge Boyle purported to do in the district court, this is a final decision of all issues in the case. What did he mean by, I don't have it right here, the last sentence in his order? The sentence where the parties to submit a plan? What did he mean by that? It looks to me like he wants to do some more work in the case. Well, I think there's a question whether, and I think this gets into the Lewis case that we cited in our brief. Let me find out what the judge was, what you read the judge to be doing first before we decide what the consequence of it is. What I am interpreting the judge to expect is the presentation of a plan. I interpret that since it's contemplating a single plan and the parties to present a single plan. If he receives that, then what does he do? It's unclear whether he's entering a consent decree as a result of this agreed upon plan that has been submitted in conjunction with counsel. He's asking for it. Correct. Obviously, he's going to react after you do it with something, right? Is he going to have a hearing? It wasn't clear. The order doesn't say whether he's anticipating a hearing and the order doesn't say whether he's expecting another order to be entered. The fact that it simply directs a plan to be submitted to the court does not directly anticipate, nor does it explicitly indicate an intention of the judge to issue a subsequent order. And so on that basis, this is a final order. Or at worst, it is retaining jurisdiction for the purposes of compliance with the order that has issued. Now, the reason I say that this is a final decision is if you look at what the plaintiffs requested in their prayer for relief, on Joint Appendix page 67, they asked for the following, a declaratory judgment that Mr. Hayden's rights have been violated. They asked for an order directing the defendants to provide Mr. Hayden with meaningful opportunity for release. The statute gives you two means by which you can appeal an interlocutory matter, one of which the district court certifies it for appeal. Of course, that did not happen here. Correct. So then you must fall under the other one that says essentially there's a granting of an injunction. The court here specifically said that it was not in an injunction at this time, but was simply sending this further to allow for a plan to be reformulated. Why should we now get in the middle of that? The court has not. And the basis of this plan was then to determine whether to issue this injunction or to move forward with it. Isn't that the time that we should be considering this appeal and not now? No, Your Honor, because the effect of the judge's ruling is that it is an injunction. The court, although it denied without prejudice the claims for injunctive relief, the claims that were sought. Well, how do we? It's true. Just stay with that for a second. Okay. The court denies without prejudice Hayden's request for injunctive relief and gives the party 60 days to present a plan, et cetera. Except that it did grant. Sounds to me like it's saying I'm not going to grant it now without prejudice. We'll look at the plan and I guess he's anticipating, hoping that you guys reach an agreement. He'll have them a injunction, consent injunction. But the effect of the order is that it is an injunction. I understand that it says it's reserving and denying without prejudice the request for injunctive relief. But if you look at the requested relief in the complaint, the order already addresses those issues. The injunctive relief that they want is a declaratory judgment and they want an order that we provide them a meaningful opportunity. The court has in large part in this order, the entire extent of it is discussing how the opportunity isn't meaningful in accordance with grant. So it's already concluded that we haven't provided them a meaningful opportunity. And they're requiring us to confer with opposing counsel or with Hayden himself and present a plan that even if Graham did apply, is left to the states to decide. But you are simply saying that you entitled your day in court on that issue. And that issue is not gone. I mean, it's still there. If you do what the judge says, even if you don't come up with a plan, I guess at some point in time he's going to enter this injunction. Then you can appeal it. And then you can come in and say, no, the judge is wrong on this. But where it is now, I think you're asking us to do this piecemeal. The judge has made this ruling. He clearly said he's not entering an injunction right now. That is the basis by which you must get in order to be able to appeal it interlocutory here since you don't have the certification. Well, I would direct your attention, Your Honor, to the Lewis case, which had a somewhat similar posture as this one does. It's far more definitive in Lewis what the judge asked. Here is a very general sort of thing. Lewis basically directed them to do a particular thing. Well, it directed them to do a series of things. But here it directs the state to confer with opposing counsel and present a plan to provide the relief. Judge Niemeyer says, go talk it out. Maybe you can settle this thing. Or maybe you can work it out. Or maybe there's some alternative. You can't come back and say, we just can't do it. Won't do it. And I think if you come back and say, we just can't do it, won't do it, judge then has to enter either an injunction or go one way on it. How do you lose on that? I mean, I don't get it. The reason that we lose, Your Honor, is we shouldn't have to undertake that step in the first place. And Lewis suggests that we don't. Waiting 60 days. If 60 days come back to the judge, we just can't do it. Well, Lewis suggests, though, that the fact that the judge stayed the order indicates that it's an injunction. And Lewis' case in particular, you had mentioned that there were several things that the court, in the district court in Lewis, required. What this court decided in Lewis was that's an injunction. Directing the defendants to take affirmative steps or to not take affirmative steps operates as an injunction, whether you call it one or not. And then the court said it is further indicated that it's an injunctive relief because the courts, the district courts stayed the order directing the defendants in Lewis to do something so that there could be an appeal taken. That's precisely the step we followed here. So I agree that it may. And maybe I'm just reading Lewis wrong. Lewis, to me, looks like he's cutting against you. What Lewis did was gave substantive relief. It told you certain things you could do and certain things you couldn't do. The judge didn't do any of that here. Judge Boyle didn't do that. He just said, go talk this thing out here and see if you can come up with a plan. I mean, that's kind of localism. But essentially, I think the bottom line is he gave you a time period. If you don't do anything and you basically just talk it out and nothing happens, and you come out and you can't do it, then he's got to make a decision at that point. Respectfully, Your Honor, I disagree. He has directed us to revise our parole procedures. He's clearly found that the existing procedures do not provide a meaningful opportunity under a case that does not apply. If you do not revise them because you say we just can't do it, then what happens? Then we're, well, first we've defied a court order that we're not submitting a plan. Then he enters an injunctive relief. He then rules against you. Then you appeal it. Sure, that would be clear that it's injunctive relief. But our point is that it's injunctive relief now. And we should not be required to undergo that. Is your argument that he's denying the formal injunctive relief requested in the complaint, but that he has issued an injunction of his own mandating you to do some stuff that you don't want to do? In part, yes. I don't think he has actually denied the injunctive relief sought in the complaint. I think the order operates to grant the injunctive relief requested in the complaint. But he also, by requiring us to confer with counsel, submit a plan that even if Graham does apply is left to the states to decide. We are now having plaintiff's input into the parole procedures. We have the court weighing whether the procedures meet its definition of meaningful or not. I have a subsidiary question. Is the only defendant a single commissioner? Your Honor, the awkward procedural posture, the way this was brought, I think the answer to that is yes. The answer functionally is yes. It looks to me as if only one commissioner is the defendant. The chairman of the commissioner who is here with me today is the named defendant, yes. And if the court ordered the commission, this one commissioner, to do something, he couldn't do it, could he? He couldn't change the system. He can't change the statute. He can't change the criteria. He can't even change the functions of the commission itself, could he? Well, the parole commission is empowered to create regulations for how parole procedures. They sued one commissioner. Well, I think this is part of the awkwardness of how this case was brought. It was initiated as a habeas action. Then it was transferred into a 1983. And then there were defendants who were added and removed. It still looks to me more like a habeas than an 83 because it seems to me if the relief is granted, he's released. Well, if the relief is granted, I think the expectation may be that he gets different parole review. Whether he's released on the basis of that new parole procedure that is anticipated by the court and the plaintiffs is a different question. I want to ask you a question. I want to go back to Lewis. Footnote 5 of Lewis actually cuts entirely against your argument because it talks about an earlier order that the court found in that footnote was not appealable where the court found for the plaintiffs on the issue of liability but told them to get together and suggest appropriate procedures to facilitate relief. Isn't that exactly what we have here? And the court in Lewis found that that was not appealable. I think one of the fundamental aspects of that particular order, and we do address that in our brief, is that the parties there agreed that that was not an appealable order. Now, Mr. Hayden has not contested jurisdiction in the brief. That would not. Whether the parties agree or disagree does not inform us as to whether it's complying with the statutory requirement that gives this court jurisdiction. In other words, the parties can neither confer jurisdiction nor take away jurisdiction. You can agree or you won't agree, but you better have the basis, the factual basis to establish jurisdiction. So it didn't make a difference in Lewis whether they agreed or not for jurisdictional purposes. You do agree with that, don't you? In part, yes. I think I want to address Judge Johnston's question first about why that order is different. First, the order that you're referring to in Lewis, in footnote 5 of that opinion, it requires counsel to, quote, forward to the court suggested procedures appropriate to facilitate an award of relief to the plaintiffs. Here, what is being submitted are the very procedures that are going to apply. It's not how are we going to implement the award to the plaintiff. It is the award to the plaintiff. The new procedures are precisely the award that the plaintiff is seeking in this case. They're seeking new parole procedures. They're seeking a different parole review process that they're not entitled to under Graham. I see I'm already three minutes into my rebuttal. I'd like to reserve my remaining time. All right. Mr. Finholt. May it please the Court, my name is Ben Finholt from North Carolina Prisoner Legal Services. I represent the appellee, Sean Hayden. As noted by the State of Virginia earlier today, North Carolina is operating a sham parole regime when it comes to juvenile offenders. Two different cases. Two different cases. So let's stick with North Carolina. And what I'd like to do is to support that contention by referring to some of the findings of fact found below by Judge Boyle at the district court level. But you've got to speak to jurisdiction first. I'm happy to answer those questions, Your Honor. It would be good if you did. Didn't you realize that what we just talked about right then was jurisdiction? Yes. This appeal is clearly interlocutory. There's no question about that. So you've got to meet one of those two provisions under the statute in order to be here. Do you agree with opposing counsel that we have jurisdiction to hear this case? Your Honor, I think. That matters, by the way. I just said it doesn't matter. You can agree all you want to agree. You're not going to confer jurisdiction on this court by your agreement or your disagreement will not take us away from it. That's correct, Your Honor. Mr. Hayden believes that the Eighth Amendment issue has been fully resolved. And we hope to get some further order on that. I think that the analogy I might make. Cut to the point, Jason. Tell me, do we have jurisdiction or not? Yes. Yes, what? Yes, because I agree with opposing counsel. Judge Boyle's order does act as an injunction. The case that I would point your honors to is out of the Sixth Circuit, Hilvey-Snyder. It's a Miller case where the district court. You point to it, but, of course, we're not bound by any case from the Sixth Circuit. That's correct. But I think it would be persuasive. It's a much more similar context where the district court had ordered Hilvey-Snyder. The district court had ordered the State of Michigan to come up with procedures for dealing with juvenile offenders in the wake of Miller. And the Sixth Circuit, in an order, held that it did have jurisdiction because the district court telling the State of Michigan, please come up with some procedures for dealing with these Miller folks did function as an injunction. So, and I believe that's analogous to the situation we have here. Pretty much like Lewis, though. Lewis, the court directed them to do specific things and things not to do. You don't have that here. No, I agree that we don't. He didn't tell you how to do this procedure. He didn't give any guidance in terms of what you had to take out. He didn't tell you exactly you got to do this. That's correct, Your Honor. And all it is is a passage of time. I think, I'm not sure it's a contempt thing for you to come back and say, well, we talked it out, and, Your Honor, we just can't do it. I think at that point, he's got to make a decision. That's correct, Your Honor. I think the court needs to satisfy itself that it has jurisdiction. Well, if that's correct, then why is it not interlocutory? Your Honor, again, I would submit that the analogy that I'm drawing is that it is interlocutory. It is appealable. The analogy to Hill v. Snyder makes sense to me. I believe that if Your Honors are not satisfied, we can send it back down and try to work something out with the state. I don't think it's a subjective thing. I'm not trying to see if we're satisfied on it. I think what we have to do is look at this case for what it is. And if a trial judge is allowed to give some remedy, he feels like there's a remedy out there, and he's giving you an opportunity to explore it and look at it and directing you or whatever to go and do it, and you come back after passage of time and say, no, we can't do it, you're back in court, and that judge has put it at a position. He's got to do something. And what he does is either issue the injunction or not. Appealable then. That may be, Your Honor. Again, I can only say that we are happy to have this court resolve the Eighth Amendment issue at this time. I think another analogy might be to a ruling on qualified immunity where it's a bit of a threshold issue. So in that case, we believe that if Your Honors are not satisfied, we're happy to go work it out with the state. I'd rather for Judge Boyle to develop this case. I mean, he's a very seasoned trial judge, and he's looked at these facts, and for him to lay out the findings of fact and present it to this court in a very orderly way for us to then give a decision, but now to ask us to just rule on this case on the basis you've given us, I mean, it feels like we've got to go back and do the trial judge's job when he's already said, I'm not giving an injunctive release at this time. It's not without prejudice. It's coming back up. Go. Do this. And 60 days. He gave a time period. He didn't just say go do it. So 60 days, come back in court and say, Your Honor, we did the best we could, or we just couldn't do it. Or we did it. Whatever. Yeah, I agree that that might be another way to do it. I think it's also perfectly acceptable, if the court believes that it has jurisdiction, to decide the Eighth Amendment claim at this time, since he has definitively ruled on that, so that when we go. Let's do part of it and don't do the other part. That's called piecemeal litigation. You know that's not allowed. No, I agree that that's not, but I think that this, again, that this does happen sometimes. In rulings on qualified immunity, courts do consider whether or not that threshold issue has been correctly decided, so that they can move forward. The state of North Carolina does. It's a totally different issue, qualified immunity. It is a different issue. I'm just drawing an analogy here because I think. There's no analogy for qualified immunity. That's confirmed. Right there, you get that based upon the qualified immunity. Yes, but if the state has not, if the state's parole procedures do not violate the Eighth Amendment, then there is nothing more for us to do below. I'm sitting here wondering, why didn't you argue, either at the district court or to opposing counsel before coming here, or to us, that, hey, wait a minute, Judge Boyle has gone this far with Graham, but that's not the end of it. We also need to then figure out what it is that needs to be changed to comply with Graham. Now, I can't imagine that you were unhappy with Judge Boyle's decision as far as he went with Graham, so I don't know why you weren't saying to opposing counsel and then to us, hey, wait a minute, let's see what Judge Boyle does with this. Let's see if we can agree to something. If not, let's see how he rules on it. In the meantime, we've got amicus briefs saying that it should look like this.  This should be included. That should be included. Judge Boyle has never had an opportunity to even rule on that. You all found your way here first, and I'm just wondering why you didn't try to put the brakes on that. I'm exactly with Judge Johnson on that question. I understand. If you had Judge Boyle make toast to finance, why would you want us to now wade into that? I don't think we're asking you. You want this thing. Yes. Don't get it. Well, we're not asking. I believe we're not asking the court to wade in on the remedy. But we believe that a ruling on the Eighth Amendment claim might clarify proceedings, and we would all sort of know where we stood when we go back down. How did Judge Boyle rule on the Eighth Amendment? He found that it was a violation of the Eighth Amendment. Why would you want a clarification of that from us? Well, because we're going to get it either way. But I don't know. That's a different type of lawyer than I am. If you win, I never knew you want to take it to a court and say, give me a clarification of a ruling that's in my favor. If you're going to get it either way, shouldn't you get it from Judge Boyle first? Again, I tell you, if we go back down, we're happy to do that. We're also happy to have you consider the Eighth Amendment claim at this time. That's what I think. But that's my opinion. And it just seems to me, as Judge Johnson has pointed out, if you're going to get it, it seems like to me you'd want that ruling from Judge Boyle first, and then we'll take a look at it. Fair enough. If I could, I'd like to turn to the merits of the Eighth Amendment claim. Judge Boyle did make several important findings, in fact, below. The first is that the parole commission conducts only a cursory review for each offender. On a typical day, the record shows that commissioners vote on approximately 91 parole and post-release supervision cases in a typical day. So that means if they don't do any other work in a nine-hour day, they're voting on a new case every six minutes. In addition, even if the commissioners spend all nine hours in a day reviewing just one case, the only things that they would see in front of them are official crime versions, prison infraction history, gang membership. None of the information that they get in front of them speaks to demonstrated maturity and rehabilitation. So there's no way for the commissioners to make that important finding that Graham requires. The next thing that the judge found is that everyone, adult and juvenile offenders alike, are treated the same way. The judge also found that the commissioners may not even know if they are reviewing the file of a juvenile offender. Judge Boyle further found that even when they do become aware that they may be reviewing the file of a juvenile offender, that information can actually be used to deny parole. So again, this is another situation where juveniles may be treated worse in the parole process than adult offenders. Again, Judge Boyle found that the parole procedures offer juvenile offenders no opportunity at all to be heard in the state of North Carolina. So it's not surprising that in North Carolina we don't have a 1 in 20 chance of getting parole. In the last five years of the 158 juvenile offenders that have been eligible for parole, only one has been granted parole. And in this situation, there's simply nothing meaningful about the review. And without a meaningful review, North Carolina is running afoul of Graham and the court's commandments in Miller and Montgomery that keeping juvenile offenders in prison for the rest of their lives should be very uncommon. I think that there are some areas in which the two sides do agree here. Judge Niemeyer addressed the idea of habeas earlier. We do not believe that this would be appropriate as a habeas case. We are not moving for Mr. Hayden to be released. We're not challenging his sentence. We're merely saying that the procedures applied to him. This is a little problematical. I understand what you're saying. But first of all, I think what you're describing is typical of parole boards. They get a lot of reviews. They have multiple persons reviewing the petitions. They start off with some gates for review. I mean, if it's a heinous crime and so forth, they may not give them serious consideration on the first application. They have to review it every year. And the problem comes is we're really reviewing decisions of the parole board. He's getting the consideration. He's getting the annual review. He's getting the votes of the commissioners. And I'm wondering what the criterion is for us to break that barrier that Miller and Montgomery and Graham all say, which is that you have to have a juvenile who's sentenced to life without parole. This man was sentenced. He's a pretty serious crime, and he was sentenced to life with parole. It seems to me you have to basically say that the parole system in North Carolina is not a parole system to get around the Supreme Court, because the Supreme Court is not going to allow federal courts to manage the parole system or to review their decisions. Well, I think that the federal courts can review their decisions to decide if the parole review is offering meaningful review. I mean, I think that's exactly what Graham is calling for. So then in doing that, instead of looking at the decisions they make, we should look at the criteria that they're applying based on statute and regulations. Yes, I think the criteria are the same as in other states. It seems to me your argument is basically you don't like the results. Well, I don't. No, that's not the argument we're making, Your Honor. The argument we're making is that on its face, the review offered to juvenile offenders in North Carolina is not meaningful. There's no situation, and it doesn't give the- Well, it's not as meaningful as it is for adults. The fact is they do have parole. The legislature has determined parole. They have guidelines to apply. They have commissioners that are hired to do their jobs. The commissioners are doing jobs. They have a big caseload. And the statistics are not favorable in parole. But the question is are we going to now supervise the parole boards in the state? Well, I do think if you look, for example, if you look at Solemn, I think that there were-the court there talked about three ways that a South Dakota system was different than the Texas system in Estelle v. Rummel. And one of them was whether or not people actually get parole. I do think that whether or not people actually get parole, you know, the idea of one in 20 or, in North Carolina's case, one in 150, it does have some bearing. That is evidence towards whether or not this is a meaningful review. And I think on its face, the idea that-I mean, this is, you know, this is six minutes per inmate if they don't do anything else. And there's evidence in the record that the commissioners do lots of other things. So, I mean, they are getting a cursory review. And even if they-even the information presented to them does not give the offender any opportunity to demonstrate maturity or rehabilitation. There's just no mechanism for that. It's like a due process argument, and the Supreme Court has rejected that notion that we have to get involved in that. I don't think that the court has rejected it when it comes to juvenile offenders. I think that that's-I think that's what we have here. Now, let's get this clear. We have to start with the proposition that a juvenile is sentenced to life without parole. This-the juveniles in North Carolina, or this juvenile, was sentenced to life with parole. So you're going to have to get through the gate as to whether the best you can say is the whole parole system is a sham. Everybody, not just the juveniles. Because if they treat everybody the same and they're giving them the same considerations and applying the standards, although doing quickly, we don't get involved in that. I disagree. I think that the-I think that Graham means that you do. I think that what Graham is saying is, yes, for adult offenders, you can operate a very low level of due process. But I do think that if you look at Graham and Miller and Montgomery subsequently, that I do think that there are certain procedural protections that the court is offering to juvenile offenders now. I mean, if you look at Miller-I mean, in Miller, the court basically said, you cannot have somebody spend the rest of their life in prison unless you offer them more process. And that's more process than adult offenders would get. And I think that the same is true here. The court said as quickly, you don't have to release juveniles. And we're not asking-we're not asking for release. We're merely asking for North Carolina to implement a meaningful review for juvenile offenders. What they're doing right now is so cursory that- So you want us to say they're going to have to sit there for half an hour to hear it? Or they're going to have to have an attorney to come before the parole board? Or they're going to have to have-I mean, what are we going to get involved in this micromanagement? It seems to me we should look at the statute. We should look at the criteria being applied and seeing if they're basically doing that. But to look at the fact that they haven't granted but a few parole releases seems to me as we're judging the results. Well, first of all, again, I do think that the results are a piece of evidence in determining whether or not review is meaningful. But I also do think that what you're looking at is whether or not-you're not just looking at the- parole procedures and just say, do these comport with the 14th Amendment, with greenholds? So do you see the problem we are confronting is in trying to inform ourselves how to handle this? Not all parole systems are the same. Judge Boyle could point out in his facts that North Carolina is one of two states that's different. They don't even allow an interview of the person without a hearing. You don't have it. I mean, there's a lot of differences here. And without the benefit of the findings of this sort, we treat this just like any old-any national system. There's not a national system. It's a North Carolina system. Judge Boyle is in a position to make those things. But you've argued against allowing him to do that and says, you guys go ahead and make the decision. Is that really what you want? Your Honor, I mean, perhaps not. Perhaps we'd rather have it go back down. I think that if the court wants to- Perhaps I am. Yes, I think that if the court wants to rule on the Eighth Amendment issue, that's fine. But I do understand, and again- I understand and see the need for developed findings of fact. These rules are put in place for a reason. They allow the trial judges who do this on a day-to-day basis to nuance it, to look at the facts, develop them. Then they come to us, and we do an orderly review of them. Yes, and I think that would be appropriate. And we're certainly happy to participate in that process below. So with that, if you don't have any other questions- Thank you, Mr. Finholm. Thank you. Mr. Finarale. I knew I shouldn't have put that there. The fact that the plaintiffs, like the district court, are focused on the results of the parole review. How many times is it granted? How many times do I have a hearing? Do I have an in-person hearing? That doesn't address the question of whether Graham even applies. Judge Niemeyer, you said it in the argument in the Virginia case before, and you've intimated it again now. Well, I'm raising it as a question. Because it looks like the Supreme Court has said repeatedly that in order for this whole Eighth Amendment doctrine to apply, somebody has to be sentenced to life without parole. And here, he was sentenced to life with parole. So that raises the question, can a juvenile now say, well, this parole is not meaningful and violates my Eighth Amendment because I'm juvenile? The implication is that in Graham, it may be so. But it seems to me at that point, you can't go to the results. You'd have to go to the structure and the way it's set up. And I win. I don't know whether North Carolina's system is an outlier or is normal. But I do know the Supreme Court has, in Graham itself, indicated that the states should be the decider of what to do in the first instance. That's correct. And that's what prompts the importance of the finding that this is really an injunction that has been issued against the state. The state, even if Graham does apply, it is clear that it is up to the state to decide what those procedures are, whether it's parole or whether it's the equivalent. Is there a legal level at which the state does such a poor job that the federal courts should intervene? Well, I guess it would depend on whether you're calling it a due process protection or an Eighth Amendment protection. I'm sure the argument would have to be it's an Eighth Amendment problem. Well, it would if you're relying on Graham, yes, because Graham never mentions the words due process. Why would it not be something where we intervene where an Eighth Amendment meaningful opportunity is not provided? Well, because the Eighth Amendment doesn't apply and does not forbid the procedures that North Carolina has in place. And that's why the injunction that we're challenging the injunction so vigorously at this point. It doesn't forbid the procedures. But once you look at the procedures, the question is, do these procedures provide a meaningful opportunity for a person who is juvenile to demonstrate maturity and rehabilitation? But you only get there if Graham applies. You don't. Of course you do, but that's not the law. What you just heard here is an opinion from us right up on the bench. But there's no precedent on that yet. This is First Depression you're dealing with here. True. What interpretation of Graham is whether it's a gate that you've got to have life without parole. And it may well be. I'm not saying. Well, I agree with. Don't start this off as though that's a done deal. No, I'm just saying I agree wholeheartedly with the opinion that's been identified on the bench is that Graham is does have that gatekeeper function. If you are not sentenced to life without parole. Graham doesn't apply. I think Judge Niemeyer expressed it most vigorously before. I'm asking the question. I'm questioning the Supreme Court has used categorically the same phrase that this Eighth Amendment applies. It doesn't say juveniles are different generally. Correct. It says that juveniles who are sentenced to life without parole or to death are treated must be treated differently. That's correct. And that's at the sentencing stage at the time the sentence is rendered. There either has to be an individual determination or you cannot have a mandate in place. And the parole systems is applicable to adults and juveniles. Correct. There is a good question. I'm not. This is not an opinion, but there is a good question under Graham, Miller and Montgomery as to whether these principles apply. And I think the answer to that question should be no, because what Graham and what Graham envisions is a meaningful opportunity for those offenders convicted to life without parole as juveniles. It doesn't say parole. I know Virginia is arguing that their geriatric release provision is the equivalent of out of Virginia. But there are different ways to attack that meaningful opportunity. And to say, as Judge Boyle has, that the one that Graham applies and two, that you are going to get into the weeds on what that meaningful opportunity should look like, completely contradicts this court's jurisprudence on parole issues. May I finish answering your question? The Van v. Angelone case, I think, is the principal one. This court does not wade into the individual parole decisions and procedures of the states. Those are left to the states. And I think that the Supreme Court acknowledged that principle in its discussion in Graham where it says that it's left to the states to decide the means and mechanism for compliance. Thank you. We'll come down and greet counsel and then take a short recess.
judges: Paul V. Niemeyer, James A. Wynn Jr., Thomas E. Johnston